UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TINA WILCOX,

     Plaintiff,

v.                            Case No.:  2:22-cv-349-JLB-KCD

TMCFM, INC.,

     Defendant.

_____/

## ORDER

Before the Court is Defendant TMCFM, Inc.'s Motion to Set Aside a Default Judgment.[1] (Doc. 23.) Plaintiff Tina Wilcox responded in opposition. (Doc. 24.) For the below reasons, the motion is granted.

## I. Background

Defendant TMCFM (a Harley-Davidson store) employed Wilcox as a service advisor. Wilcox suffers from a hearing impairment that affects her ability to work and led her to ask Defendant for reasonable accommodations. Her requests were allegedly ignored or denied. Around this same time, Wilcox alleges Defendant engaged in sex-based discrimination by assigning customers

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), this motion was referred to the assigned Magistrate Judge for disposition by an order subject to any Rule 72(a) objections. *See* Local Rule 1.02; *see also Bell v. Chambliss*, No. 3:13-CV-479-J-34JBT, 2015 WL 5997047 (M.D. Fla. Oct. 14, 2015).

to her male co-workers instead of her. She complained to Defendant until she was terminated in April 2021. Wilcox brings claims for disability discrimination and retaliation under the Americans with Disabilities Act and the Florida Civil Rights Act. (*See* Doc. 1.)

Defendant did not respond to the complaint. Wilcox thus secured a clerk's default, and then moved for a default judgment. Her motion was granted in part and denied in part. (Doc. 12; Doc. 15.) The Court granted default judgment for Wilcox as to Defendant's liability. As for damages, the Court awarded $77,659.40 in back pay. But damages were not entirely settled. The Court left open Wilcox's request for front pay, compensatory damages, and punitive damages because she still needed to provide evidentiary support for those requests. Thus, the matter was referred to the undersigned to hold "an evidentiary hearing and for entry of an order or report and recommendation, as appropriate." (Doc. 15 at 2.) The Court's order, judgment, and notice of hearing were mailed to Defendant.

Defendant received the clerk-mailed filings and appeared before the evidentiary hearing. The Court recounts Defendant's explanation of what happened that led to the default, supported by declarations. (Docs. 23-2, 23-3, 23-4.) Defendant's controller, Juliana Garcia, accepted service in June 2022, when the case was filed. When a complaint or other legal papers are received, Defendant's internal procedures direct that the documents be scanned and

emailed, that day, to at least these individuals: general counsel (Mark Petti), HR director (Matt Huelsman), CEO (David Veracka), and the general manager of the dealership. The same day the complaint was received here, Garcia emailed it to Petti, the general manager of the dealership, and a managing partner with the subject line: "TINA WILCOX – CIVIL ACTION." She neglected, however, to include the HR director and CEO. Although inadvertent, Garcia's omission was critical according to Defendant because, at the time, Petti was on an extended summer vacation. And due to his own inadvertence, Petti missed Garcia's email. The HR director and CEO would ordinarily provide additional safeguards for Petti's inadvertence, but those safeguards were unavailable here through Garcia's omission.

When Garcia later received the clerk-mailed filings in April 2023, which included the partial default judgment, she followed the correct internal procedure. From there, Defendant began participating in the case. Between when the complaint was served and Defendant appeared, the dealership received no other legal papers from the case, including the Motion for Clerk's Default (Doc. 11), the Clerk's Default (Doc. 12), the Motion for Default Judgment (Doc. 13), and the Report & Recommendation (Doc. 14).

## II. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure states that a district court "may set aside an entry of default for good cause, and it may set aside a final

3

default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, allows a court to set aside a final judgment if it results from "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The importance of distinguishing between these two rules "lies in the standard to be applied in determining whether or not to set aside the default." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). "The excusable neglect standard that courts apply" under Rule 60 "is more rigorous than the good cause standard that is utilized" by Rule 55. *Hinson v. Webster Indus.*, 240 F.R.D. 687, 690 (M.D. Ala. 2007).

Both parties ask the Court to apply Rule 60(b). Defendant asserts that its innocent oversight establishes excusable neglect. (Doc. 23.) Wilcox responds that Defendant made no reasonable inquires on the status of the case after management and executive-level employees were put on notice of the suit, which does not establish excusable neglect. (Doc. 24.)

But Rule 60(b) has no application here. The standard for setting aside a default "turn[s] on whether . . . [it] is final." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 130 (4th Cir. 2020); *see also* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a *final default judgment* under Rule 60(b)[.]" (emphasis added)). The concept of finality as the deciding factor when selecting the correct rule is also outlined in Rule 55's committee notes:

> Rule 55(c) is amended to make plain the interplay between Rules 54(b), 55(c), and 60(b). A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs the entry of final judgment under 54(b). Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time. The demanding standards set by Rule 60(b) apply only in seeking relief from final judgment.

Fed. R. Civ. P. 55(c) committee notes to 2015 amendment.[2]

A final judgment is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pearson v. Kemp*, 831 F. App'x 467, 470 (11th Cir. 2020); *see also See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (holding that a judgment where damages remained to be resolved was not final). The Eleventh Circuit's decision in *Lamb v. Clayton Cty. Schs.*, No. 21-12292-GG, 2021 U.S. App. LEXIS 29738 (11th Cir. Oct. 1, 2021) is instructive. There, the court explained that a jury verdict was a non-final judgment because it determined liability and awarded compensatory damages but left unresolved the assessment of back pay and equitable relief. *Id.* at *1. These issues were "not a purely ministerial task" because "the district court had to resolve the parties' disputes as to the amount of the back pay award, the rate of interest, and whether Appellee was entitled to lost fringe benefits." *Id.* at *1-2; *see also S.E.C. v. Carrillo*, 325 F.3d 1268,

---

[2] Although not binding, the interpretations in the Advisory Committee Notes "are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle And Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

1272-74 (11th Cir. 2003) (providing that an order that does not completely resolve the issue of damages may still be final if the calculation required is "purely ministerial in nature" and requires only "simple arithmetic calculation").

Measured against these standards, the default judgment Defendant seeks to vacate is by no means final. Wilcox is still seeking relief from the Court, including front pay, compensatory damages, and punitive damages. Indeed, the judgment itself notes that these issues were undecided and left for an evidentiary hearing. (Doc. 17.) In analogous situations, courts have found that a default judgment is not final when damages have yet to be computed, and have thus applied the "good cause" standard in Rule 55(c). *See Intercontinental Hotels Grp., Inc. v. Weis Builders, Inc.*, No. 1:06CV-1213-WSD, 2007 WL 2705559, at *1 (N.D. Ga. Sept. 12, 2007); *Fidrych*, 952 F.3d at 131 ("Because no final judgment of default had been entered in this case, Rule 60 was inapplicable, and the district court properly applied Rule 55's good-cause standard when considering Marriott's motion to set aside the default."); *Live Bait, LLC v. Hudson Specialty Ins. Co.*, No. CV 1:20-00213-JB-B, 2020 WL 5441131, at *2 (S.D. Ala. July 6, 2020) ("Although both parties briefed and argued assuming the application of Rule 60(b) to Defendant's request to set the default aside, the Court finds that because no final judgment was entered, Defendant's motion is properly decided under the standard of Rule 55(c).").

As mentioned, Rule 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause is a mutable standard, varying from situation to situation." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "It is also a liberal one—but not so elastic as to be devoid of substance." *Id.* The defaulting party bears the burden of establishing good cause. *See Afr. Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

Although not "talismanic," factors in the good cause analysis include "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana*, 88 F.3d at 951. Also instructive is "whether the defaulting party acted promptly to correct the default." *Id; see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th Cir. 2014). This test is measured against the backdrop that defaults are disfavored because of the "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

## III. Discussion

Applying Rule 55(c), as the Court must, the partial default judgment cannot stand. For starters, the record does not reveal willful conduct. *See Compania Interamericana*, 88 F.3d at 951-52 ("[I]f a party willfully defaults . .

7

. the court need make no other findings in denying relief."). Willful conduct is "either an intentional or reckless disregard for the judicial proceedings." *Id.* at 951. Defendant failed to respond to the lawsuit because of a breakdown in its internal procedures for processing complaints. There is no sign that the failure was intentional or reckless. A better characterization of what occurred was negligence. And good cause "encompasses situations in which failure to comply with a filing deadline is due to negligence." *Carmody v. MHM Sols., Inc.*, No. 08-14198-CIV, 2008 WL 2844038, at *1 (S.D. Fla. July 23, 2008).

Moving on, Wilcox argues that setting aside the default prejudices her because she will have to litigate the case and wait two years for trial. (Doc. 24 at 16-17.) The prejudice inquiry, however, is "whether prejudice results from the *delay*, not from having to continue to litigate the case." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009) (emphasis original). "Moreover, there is no prejudice in requiring a plaintiff to prove his or her case." *Sherrard v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 738 (11th Cir. 2018). The increased costs of having to litigate the matter is simply not enough. *Id.* at 739.

Hearing this case on the merits is also appropriate because Defendant has presented at least a colorable defense. According to Defendant, the parties have a binding arbitration agreement. *See Mutka v. Top Hat Imports, LLC*, No. 2:18-CV-539-FTM-38MRM, 2018 WL 11485278, at *1 (M.D. Fla. Dec. 13, 2018)

(vacating default judgment when the defendant had "defenses that might affect the outcome of th[e] case, such as [the plaintiff] signing an arbitration agreement").

Finally, the Court is satisfied Defendant acted promptly. Although, as Wilcox points out, several months passed between Defendant learning of the default and moving to set it aside, Defendant was not idle during that time. Defendant explains it engaged in settlement discussions with opposing counsel and attended a status conference with the Court. Defendant also took immediate action to hire an attorney but could not find counsel with availability until a month later. Then after counsel entered an appearance, they moved to set aside the judgment within weeks. Of note, Defendant's motion is lengthy and required counsel to obtain the declarations of several individuals within the company. Considering this timeline, the Court is satisfied Defendant did not sit on its hands.

Weighing the facts surrounding Defendant's default and the Eleventh Circuit's "strong policy of determining cases on their merits," the Court concludes that the partial default judgment should be set aside. *Perez v. Wells*

*Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).[3] Accordingly, it is now

**ORDERED**:

1.     Defendant's Motion to Set Aside Default Judgment (Doc. 23) is

**GRANTED**;

2.     The Clerk is **DIRECTED** to set aside the default judgment (Doc.

17) and administratively close this case pending a responsive pleading from

Defendant;

3.     Defendant is directed to respond to the complaint by **October 10,**

**2023**, at which time the Clerk is directed to lift the administrative closure.

**ENTERED** in Fort Myers, Florida on September 29, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

---

[3] At the end of her brief, Wilcox makes a conclusory request for discovery. (Doc. 24 at 20.) With no citation to authority or explanation for what discovery is necessary, this request is denied. *See, e.g., Eli Rsch., LLC v. Must Have Info, Inc.*, No. 2:13-CV-695-FTM-38CM, 2014 WL 4983710, at *2 (M.D. Fla. Oct. 6, 2014).