UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TINA WILCOX,

        Plaintiff,

v.

                                    Case No:   2:22-cv-00349-JLB-KCD

TMCFM, INC., D/B/A ROCKSTAR
HARLEY-DAVIDSON, a Florida
corporation,

        Defendant.

_____/

## ORDER

Before the Court is Defendant Rockstar Harley-Davidson's Motion for Summary Judgment (Doc. 42). Plaintiff Tina Wilcox alleges that Defendant discriminated against her based on her disability and gender, in violation of Florida and federal law, and terminated her in retaliation for her discrimination complaints and requests for accommodation. (Doc. 1). After careful review of the Complaint, the parties' briefing, the entire record, and application of the *McDonnell Douglas* burden-shifting analysis[1] and, in the alternative, the "convincing mosaic of circumstantial evidence"[2] analysis, Defendant's Motion for Summary Judgment is **GRANTED**.

_____

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973) (establishing a burden-shifting framework for Title VII discrimination and retaliation claims).

[2] *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (establishing that a plaintiff who cannot meet the *McDonnell Douglas* standard can still prove her case with a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker") (citation omitted).

## BACKGROUND

Plaintiff began working as a service advisor for Defendant, a motorcycle dealership, in September 2018. (Doc. 47-1 at ¶ 3; Doc. 1 at ¶ 6; Doc. 26 at ¶ 6; Doc. 42 at 4; Doc. 47 at 1). Her job duties included communicating with customers and putting in service work orders. (Doc. 47-1 at ¶ 3; Doc. 42 at 4).

Plaintiff alleges that Defendant discriminated against her because of her disability. During her employment with Defendant, Plaintiff suffered from a hearing impairment. (Doc. 1 at ¶ 8; Doc. 54 at ¶ 1 n.1). Because of this disability, Plaintiff requested accommodations. For instance, she requested that the music in the building be lowered on several occasions. (Doc. 42 at 6; Doc. 47 at 3; Doc. 42-1 at 9, 14). Each time Plaintiff made this request, Defendant turned down the music. (Doc. 42 at 6; Doc. 47 at 3).

Around June 2019, Plaintiff spoke to her supervisor, Don Fagans, to request "a headset and amplified phone." (Doc. 1 at ¶ 12; Doc. 47 at 3, 13–14; Doc. 42-1 at 8–9, 14–15; Doc. 47-1 at ¶ 7). Plaintiff identified the equipment that she "believe[d] would best work with [Defendant's] system." (Doc. 42-1 at 8–9). During her deposition, Plaintiff testified that Fagans told her the equipment was "too expensive" and to "find another option." (*Id.*). The next time she discussed an accommodation is when she spoke to Fagans in 2019 to "let [he and Sarah Mutka, the controller,] know that [she] was looking for a unit that could plug into the phone to serve as a portable Bluetooth connection." (*Id.*). Plaintiff testified that she found "something to hook into the phone to make it portable" but "wasn't even sure if it

2

was going to work" and "let them know [she] was still looking for an option." (*Id.* at 9). Plaintiff did not follow up until mid-2020. (*Id.* at 14).

When she did again address possible accommodations, Plaintiff suggested that "[she] could look into . . . the phone thing." (*Id.*). In response, Fagans told her to "let [him] know if there's anything you find." (*Id.*). Plaintiff testified that she told Fagans that she "did not find a single thing that would work other than the initial telephone" and that Defendant did not follow up with her after this discussion. (*Id.*; Doc. 42 at 6).

Plaintiff also alleges that Defendant treated her differently than her male counterparts. Specifically, she alleges that she received fewer work assignments than her male co-worker, Travis Clark. (Doc. 1 at ¶ 20; Doc. 47 at 13; Doc. 42-1 at 10–13; Doc. 47-1 at ¶ 7; Doc. 42 at 18). Plaintiff alleges that she complained about this treatment to Geno DeMauro, a general manager, and Juliana Garcia, a controller. (Doc. 47 at 8, 13; Doc. 42-1 at 15–16; Doc. 42 at 20).

Leading up to Plaintiff's termination, she received several written reprimands. On January 28, 2020, Plaintiff was reprimanded for wearing inappropriate attire and for asking a manager outside in her department to resolve an issue within her department. (Doc. 42-1 at 75–76). On September 3, 2020, she was reprimanded for ordering a wrong part. (*Id.* at 77–78). On January 11, 2021, she received a final written reprimand for several customer complaints about poor communication or no communication at all. (*Id.* at 79–80). The final reprimand warned Plaintiff that failure to improve may result in termination. (*Id.*).

In April 2021, the month Plaintiff was terminated, she received a CXI (Customer Experience) score of 6.42 out of 10. (Doc. 47 at 11; Doc. 47-1 at ¶ 3; Doc. 47-4 at 16). CXI scores measure monthly job performance using customer surveys with metrics for communication and quality of work to assess overall customer satisfaction. (*See* Doc. 42-1 at 88–98; Doc. 47 at 1; Doc. 42-1 at 22). Plaintiff alleges that other non-disabled, male employees received a similarly low score at least once without adverse action. (*See* Doc. 47-4).

Defendant began the termination process on April 13, 2021. (Doc. 42-1 at 86; Doc. 54 at 7). On April 14, 2021, Plaintiff emailed Robert Huege, a general manager, asking for a meeting to discuss gender and disability discrimination. (Doc. 47 at 15; Doc. 47-1 at ¶ 7; Doc. 42-1 at 26; Doc. 54 at 7). She received no reply. Later, on the same day, Defendant provided Plaintiff notice of termination. (Doc. 42-1 at 86–87). As reasons for termination, the notice cited that Plaintiff left confidential information unattended on April 10, 2021, and that she received a low CXI score in April, where surveyed customers "specifically mentioned poor communication, or no communication at all." (*Id.*).

Plaintiff brings this action against Defendant, alleging seven claims of discrimination and retaliation: (1) disability discrimination for failure to accommodate in violation of the Americans with Disabilities Act, As Amended ("ADA"); (2) disability discrimination for failure to accommodate in violation of the Florida Civil Rights Act ("FCRA"); (3) retaliation in violation of the ADA; (4) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; (5) gender

discrimination in violation of the FCRA; (6) retaliation in violation of Title VII; and (7) retaliation in violation of the FCRA.[3]  (*See generally* Doc. 1).

Defendant moves for summary judgment on all claims (Doc. 42).  Plaintiff responded in opposition (Doc. 47), and Defendant replied (Doc. 54).

## LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case" and "[a]n issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted).

The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case."  *McGee v. Sentinel Offender Servs., LLC,*

---

[3] The parties do not dispute that Plaintiff has exhausted her administrative remedies for all claims.  (Doc. 1 at ¶¶ 38, 53, 62, 72, 82, 91, 100; Doc. 26 at ¶¶ 38, 53, 62, 72, 82, 91, 100; Doc. 1-1).

5

719 F.3d 1236, 1242 (11th Cir. 2013).  If that burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation and internal quotation marks omitted).  Unsupported conclusions and factual allegations are insufficient to create a genuine issue of material fact. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

In reviewing a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant."  *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

## DISCUSSION

Defendant moves for summary judgment on all counts, arguing that Plaintiff has not provided sufficient allegations or evidence to support her claims.  The Court agrees.

### I.    Disability Discrimination.

Plaintiff alleges Defendant discriminated against her by failing to accommodate her disability in violation of the ADA and the FCRA.  (Doc. 1 at ¶¶ 24–53); 42 U.S.C. § 12112(a); Fla. Stat. § 760.10(1)(a).  Because "claims under the [FCRA] are analyzed under the same framework as ADA claims," the Court considers these claims together.  *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005).

6

To establish disability discrimination, Plaintiff must show that "(1) [s]he is disabled; (2) [s]he is a qualified individual; and (3) [s]he was subjected to unlawful discrimination because of h[er] disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007) (citation omitted). The parties dispute only the third prong. (Doc. 1 at ¶ 8; Doc. 54 at 1 n.1).

An employer unlawfully discriminates against an employee when it "fail[s] to reasonably accommodate [the employee's] disability, leading to an adverse employment decision." *See Holly*, 492 F.3d at 1263 n.17; *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (explaining that the plaintiff "must show that any failure of [the employer] to accommodate his [disability] negatively impacted the hiring, promotion, firing, compensation, training, or other terms, conditions, or privileges of [the plaintiff's] employment").

To be adverse, the employment decision must have "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (citation omitted).[4] Plaintiff alleges that

---

[4] *Muldrow* dealt with a Title VII discrimination claim under 42 U.S.C. § 2000e-2, making it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See Muldrow*, 601 U.S. at 346. This language is mirrored in the anti-discrimination language of the ADA, providing that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Thus, *Muldrow*'s analysis is relevant to the interpretation of the ADA. *See Huck v. Mega Nursing Servs., Inc.*, 989 F. Supp. 1462, 1463 (S.D. Fla. 1997) ("[S]ince the language in Title VII was analogous to the ADA, the courts have used the Title VII cases as a guide for determining employee liability under the ADA."); *Hayes v. Disney Parks, Experiences & Prods., Inc.*, No. 6:23-CV-252-ACC-EJK, 2024 WL 1830873, at *5 n.9 (M.D. Fla. Mar. 21, 2024) (same).

she experienced "negative employment action in the form of discipline and termination." (Doc. 1 at ¶¶ 34, 49; *see* Doc. 47 at 2–4). Though Plaintiff does not specify what discipline she is referring to, the only discipline she experienced were written reprimands. (*See* Doc. 42-1 at 75–80).

Written reprimands by themselves do not constitute an adverse employment decision. *See Davis v. Orange Cnty.*, No. 6:22-CV-2222-PGB-UAM, 2025 WL 948934, at *4 (M.D. Fla. Mar. 30, 2025) (finding that a written reprimand was not an adverse action under *Muldrow* where "[p]laintiff fail[ed] to identify a single term or condition of the . . . employment that was harmed, or could have been harmed, by the written reprimand") (*citing Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment.")).

The written reprimands did not change a term or condition of Plaintiff's employment, nor does she allege that they had such an effect. (*See* Doc. 42-1 at 75–80). Thus, Plaintiff cannot establish a prima facie case for disability discrimination because of the written reprimands. Accordingly, the Court looks only to termination as the adverse action.

### A. Plaintiff cannot show that failure to accommodate led to termination.

Plaintiff was terminated because her customers complained of "poor communication, or no communication at all" and because she violated company

8

policy by leaving confidential information out unattended.  (Doc. 42 at ¶¶ 34–35; Doc. 42-1 at 86).  Plaintiff has neither alleged that the lack of accommodation is the reason for her poor customer communication or lack thereof, nor has she alleged that it is the reason for leaving confidential information out unattended.  Therefore, Plaintiff has made no showing that Defendant's failure to accommodate her disability led to her termination.  *See, e.g.*, *Holly*, 492 F.3d at 1263 n.17 (explaining that "[the plaintiff] bears the burden of showing not only that [the employer] failed to reasonably accommodate h[er] disability, but that, but for [the employer's] failure to accommodate h[er] disability, [s]he would not have been terminated").

## B. Plaintiff has not established disability discrimination under the *McDonnell Douglas* framework.

Defendant argues that Plaintiff's disability discrimination claims also fail under the *McDonnell Douglas* framework.[5]  (Doc. 42 at 12–14).  Courts use this burden-shifting framework as a method to evaluate ADA claims based on circumstantial evidence.  *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)).

---

[5] In an unpublished opinion, the Eleventh Circuit held that failure to accommodate claims are not analyzed under the *McDonnell Douglas* framework.  *See Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007) ("[W]e join [our sister circuits] today and hold that *McDonnell Douglas* burden-shifting in not applicable to reasonable accommodation cases.").  However, the Court has also "passingly suggested that [the *McDonnell Douglas* framework] governs failure-to-accommodate claims."  *Geter v. Schneider Nat'l Carriers, Inc.*, No. 22-11285, 2023 WL 7321610, at *8 n.3 (11th Cir. Nov. 7, 2023) (citing *Holly*, 492 F.3d at 1255 (explaining that *McDonnell Douglas* applies to discrimination claims)).  The Eleventh Circuit has not resolved this issue.  *See id.* ("We need not resolve this matter . . . .").  In all events, the Court has also set forth its examination of Plaintiff's claims utilizing the convincing mosaic of circumstantial evidence standard to independently reject Plaintiff's claims.  *See infra* Part IV.

Under this analysis, establishing a prima facie case of discrimination "entitles the plaintiff to a rebuttable presumption of intentional discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15 (1983)). Defendant may rebut the presumption by offering a valid, non-discriminatory reason for its decision. *Id.* Plaintiff then bears the burden of presenting sufficient evidence "that the employer's justification was pretextual" and "that the real reason for the employment action was discrimination." *Id.*

### i.    Plaintiff has established a prima facie case for disability discrimination.

Plaintiff argues that Defendant failed to accommodate her disability by not turning down the music in the building. (Doc. 1 at ¶ 12; Doc. 47 at 3, 13–14; Doc. 42-1 at 9, 14–15). The parties do not dispute that the music volume was lowered each time Plaintiff requested it be lowered. (Doc. 42 at 6; Doc. 47 at 3). Rather, Plaintiff argues she should not have had repeatedly make the request. (Doc. 47 at 3). However, Plaintiff does not allege that she asked Defendant to permanently lower the music or to keep it at or under a specific volume. Consequently, Plaintiff "cannot point to 'a specific instance in which she needed an accommodation and was denied one'" regarding the music volume. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1032 (11th Cir. 2020) (citation omitted).

Plaintiff next alleges that Defendant failed to accommodate her by not purchasing the requested phone equipment. (Doc. 1 at ¶ 12; Doc. 47 at 3, 13–14; Doc. 42-1 at 8–9, 14). In response, Defendant argues that any failure to

accommodate was caused by a breakdown in the interactive process by Plaintiff. (Doc. 42 at 16) (citing *Byrd v. UPS*, 814 F. App'x 536, 540 (11th Cir. 2020)).  This is true of the 2019 interactions because Plaintiff never identified a specific accommodation after Defendant told her the phone was too expensive.  Instead, Plaintiff testified that she "let them know I was still looking for an option."  (Doc. 42-1 at 9).  However, in 2020, Plaintiff told Defendant that the only option that would work was the telephone she initially identified.  (*Id.* at 14).

Although an "employer is not required to accommodate an employee in any manner in which that employee desires," in this instance, Plaintiff communicated to Defendant that there was no other identifiable option.  *See Byrd*, 814 F. App'x at 540 (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir. 1997)).  Following that conversation, there is no allegation from either party that Defendant followed up on her accommodations request.  *Id.*; *see, e.g.*, *Meyer v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 592 F. App'x 786, 791 (11th Cir. 2014) (explaining that the plaintiff must allege that other options could not provide reasonable accommodation).  Viewing the summary judgment record in the light most favorable to Plaintiff, she identified a reasonable accommodation that Defendant failed to provide.  Thus, Plaintiff has established a prima facie claim for disability discrimination.

### ii.    Plaintiff cannot prove that Defendant's reasons for termination were pretextual.

Because Defendant has offered non-discriminatory reasons for termination, the burden shifts to Plaintiff to prove that the reasons are pretextual.  *Tynes*, 88

F.4th at 944. "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original) (quotation omitted); *Akridge*, 93 F.4th at 1196 (same). "A plaintiff's failure to rebut *even one* nondiscriminatory reason is sufficient to warrant summary judgment for the employer." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1290–91 (11th Cir. 2018) (emphasis added) (citation omitted).

Defendant's reasons for Plaintiff's termination were her violation of company policy for leaving confidential information out unattended and customer complaints of "poor communication, or no communication at all." (Doc. 42 at ¶¶ 34–35; Doc. 42-1 at 86).

Plaintiff does not allege that these reasons are false. In fact, Plaintiff admits that they are true. (Doc. 42-1 at 22). When asked whether customers left negative CXI scores, Plaintiff responded "[y]es." (*Id.*) When asked if her customers complained of poor or lack of communication, Plaintiff responded "[y]es." (*Id.*) Plaintiff also admitted that she left confidential information on her desk unattended, testifying that "[t]here w[as] a work order list that was left on top of my desk when I was not at it." (*Id.*) When asked if this was against company policy, Plaintiff said "[i]t is." (*Id.*)

Given these facts, Plaintiff cannot demonstrate that the reasons Defendant provided for termination are pretextual. Accordingly, Plaintiff's disability discrimination claim fails under the *McDonnell Douglas* framework.

12

## II.    Gender Discrimination.

Plaintiff alleges gender discrimination under Title VII and the FCRA.  (Doc. 1 at ¶¶ 63–82); 42 U.S.C. § 2000e-2; Fla. Stat. § 760.10(1)(a).  Both are evaluated using the *McDonnell Douglas* burden-shifting framework.  *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).  "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, . . . the state-law claims do not need separate discussion and their outcome is the same as the federal ones."  *Id.* at 1271 (citations omitted).

To establish a prima facie gender discrimination claim for disparate treatment, "a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class."  *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (citing *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003)).  Only the fourth prong is contested.  (Doc. 42 at 18; Doc. 47 at 10–11).

### A. Plaintiff waived any claim that she was discharged because of her gender.

Defendant argues that Plaintiff has waived her discriminatory discharge claim because she conceded during her deposition testimony that she was not terminated because of her gender.  (Doc. 42 at 12; Doc. 42-1 at 13) (citing *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 661 (11th Cir. 2012) (holding there was no discriminatory discharge where the plaintiff testified that she did not

believe race was the cause for her termination) and *Peters v. HealthSouth of Dothan, Inc.*, 542 F. App'x 782, 787 (11th Cir. 2013) (holding that the plaintiff's testimony that "she did not believe [her supervisor] had discriminated against her because of her race" warranted summary judgment in favor of the employer for the discriminatory discharge claim)).

Plaintiff does not dispute this argument.  Instead, Plaintiff argues that, despite her concession, she still experienced "disparate treatment."  (Doc. 47 at 3).  However, termination is the only adverse action that Plaintiff can rely on to show gender discrimination.  *See supra* Part I.  Therefore, to the extent that Plaintiff alleges discriminatory discharge based on gender, the Court agrees that the claim is waived.  Even if Plaintiff did not waive this claim, she has not provided a sufficient comparator.

### B.  Plaintiff has not met her burden for gender discrimination under *McDonnell Douglas*.

Plaintiff cannot meet her burden of establishing a prima facie case under the *McDonnell Douglas* framework because she failed to show that similarly situated employees outside her protected class were treated more favorably by Defendant.  Under the *McDonnell Douglas* framework, Plaintiff "must show that she and her comparators are similarly situated in all material respects" such that "they cannot reasonably be distinguished."  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226, 1228 (11th Cir. 2019) (citation and internal quotation marks omitted).  This means that a valid comparator was "engaged in the same basic conduct (or misconduct) as the plaintiff," was "subject to the same employment policy, guideline, or rule as the

14

plaintiff," and "share[s] the plaintiff's employment or disciplinary history." *Id.* at 1127–28.

The only comparators Plaintiff offers is a list of non-disabled, male employees who at some point received a CXI score comparable to her April 2021 CXI score of 6.42. (Doc. 47 at 11; Doc. 47-4). For example, in January 2020, Mike Doherty received a 5.00, and in February 2021 Todd Brownson received a 6.00. (Doc. 47 at 11; Doc. 47-4 at 1, 14). Plaintiff provides no additional information to compare these employees with herself. She makes no attempt to establish that they were subject to the same guidelines, that they engaged in the same misconduct as she did, or that she shares employment or disciplinary history with any of them. Thus, Plaintiff cannot establish a prima facie case of gender discrimination.

Further, Plaintiff alleges that she was given fewer work assignments than her male counterparts. (Doc. 1 at ¶ 20; Doc. 47 at 13; Doc. 42-1 at 10–13; Doc. 47-1 at ¶ 7). The only comparator Plaintiff offers to support this allegation is Travis Clark, a male employee. (Doc. 47 at 13) (citing Doc. 47-1 at ¶ 7). Because Plaintiff failed to provide any information to compare herself with Clark, she cannot establish a prima facie claim for discrimination based on this allegation.[6]

---

[6] In the conclusion of her Response, Plaintiff alleges in passing that "male employees retained their parts books while [hers] was taken away[.]" (Doc. 47 at 19). Nowhere in the Complaint does Plaintiff make this allegation, nor does she provide any additional information in the Response. Thus, this claim is abandoned, and the Court will not consider it. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) ("A party abandons an issue when she makes only passing references to it, references it as mere background to main arguments, or buries it within other arguments . . . . Abandonment also occurs if a party raises an issue for the first time in a reply brief.") (citation omitted).

### III.    Retaliation.

Plaintiff claims that she was terminated in retaliation for making accommodation requests and for complaining of discrimination.  (*See* Doc. 1; Doc. 47 at 12–14).  Retaliation claims supported with circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework.  *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1326 (11th Cir. 2020).

To establish a prima facie case for retaliation, "the plaintiff must show (1) that she engaged in a statutorily protected expression, (2) that she suffered an adverse employment action, and (3) that a causal link existed between the adverse action and her protected expression."  *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1336 (11th Cir. 2021) (citation omitted).[7]  Because the parties agree that termination is an adverse employment action, only the first and third prongs are disputed.

Plaintiff alleges that she engaged in statutorily protected activity by repeatedly making requests to accommodate her disability.  (Doc. 47 at 13–14; Doc. 1 at ¶¶ 7, 11, 12).  The ADA prohibits retaliation "because [the employee] has opposed any . . . unlawful employment practice."  42 U.S.C. § 2000e-3(a).  The word "opposed" is interpreted by "'its ordinary meaning,' which includes 'to resist or antagonize; to contend against; to confront; resist; withstand.'"  *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1347 (11th Cir. 2022) (quoting *Crawford v. Metro. Gov't of*

---

[7] Because Title VII retaliation claims are evaluated under the same framework as ADA retaliation claims, the Court evaluates all the retaliation claims together.  *Stewart*, 117 F.3d at 1287 (11th Cir. 1997) ("[W]e assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII.") (citation omitted).

*Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)).  Opposition "requires at least the disclosure of an individual's position or opinion on a matter." *Thampi v. Manatee Cnty. Bd. of Comm'rs*, 384 F. App'x 983, 990 (11th Cir. 2010) (citation omitted).  And "the employee must . . . at the very least, communicate her belief that discrimination is occurring to the employer." *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (citation and internal quotation marks omitted).

An accommodation request is not a statutorily protected activity because a request is not *opposing* unlawful activity.  *See id.* ("A simple request for maternity leave would not suffice, because it alone would not announce opposition to the discriminatory basis for its denial."); *Norris v. Honeywell Int'l, Inc.,* No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *19 (M.D. Fla. Sept. 26, 2023) (finding no statutorily protected activity where the employee "requested exemptions from [d]efendant's Mandate"); *Benitez v. True Choice Telecom, LLC*, No. 619CV2148ORL37GJK, 2020 WL 10058215, at *2 (M.D. Fla. Mar. 26, 2020) (finding no statutorily protected activity for plaintiff's ADA retaliation claim where plaintiff "request[ed] an accommodation to her work schedule").

Plaintiff next alleges that she complained to DeMauro and Garcia that she was treated differently because of her gender, and that she received fewer work assignments than one of the male employees.  (Doc. 47 at 13; Doc. 42-1 at 14–16).

Defendant argues that there is no causal connection between Plaintiff's complaint to DeMauro and her termination because DeMauro was not involved in

the termination decision.  (Doc. 42 at 8; Doc. 42-2 at ¶¶ 2–3).  Indeed, at the time

Plaintiff was terminated, DeMauro no longer worked for Defendant.  (Doc. 42 at 20;

Doc. 42-1 at 15).  Because DeMauro was not a decisionmaker for Plaintiff's

termination and Plaintiff does not allege that DeMauro communicated the

complaint to anyone else, Plaintiff's complaint to him cannot establish a causal link

between the protected activity and the adverse action.  *See McCreight v.*

*AuburnBank*, 117 F.4th 1322, 1339 (11th Cir. 2024) (holding that there was no

causal link where there was no "[p]roof of the *decisionmaker's* knowledge or

awareness of those complaints") (emphasis added).

Defendant further argues that there is no causal link between Plaintiff's

other complaints and her termination.  (Doc. 42 at 19–20).  The Court agrees.  The

only causal link Plaintiff offers for *any* of her protected activity is temporal

proximity.  (*See* Doc. 47 at 14–15) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d

1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close

temporal proximity between the statutorily protected activity and the adverse

employment action.")).  Yet, Plaintiff spoke to Juliana Garcia more than four

months before she was terminated.  (Doc. 42-1 at 16).  As to Plaintiff's complaints

about work assignments, she provides no timeframe.  The latest date Plaintiff

provided in the record was in 2020.  (*Id.* at 12–13).  Protected activity that

happened months before termination cannot establish a causal connection.

*Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018) ("[W]e have

explained that an employee's termination within days—or *at the most within two*

*weeks*—of his protected activity can be circumstantial evidence of a causal connection between the two.") (emphasis added).  Because there is no causal link, Plaintiff's retaliation claims fail as to these complaints.

Plaintiff last argues that she engaged in statutorily protected activity when she emailed Huege, a general manager, before being terminated to set a meeting about gender and disability discrimination.  (Doc. 47 at 15; Doc. 47-1 at ¶ 7; Doc. 42-1 at 26).  Defendant contends that this is not protected activity because an email asking to discuss discrimination is not an opposing activity.  (Doc. 54 at 6–7).  However, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."  *Crawford*, 555 U.S. at 276 (emphasis altered) (citations and internal quotation marks omitted).

Even so, "employees who are already on thin ice [cannot] insulate themselves against termination or discipline by preemptively making a discrimination complaint."  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) (holding that the employer "had legitimate non-discriminatory reasons to fire [plaintiff] before she complained, and it remained free to act on those reasons afterward"); *Tucker v. Fla. Dep't of Transp.*, 678 F. App'x 893, 897 (11th Cir. 2017) (holding there was no causal connection based on temporal proximity where plaintiff admitted in her deposition testimony that "she believe[d] [the employer] had made the decision to terminate her . . . well before [she engaged in statutorily

19

protected activity]").

Plaintiff knew her employment with Defendant was on shaky ground before sending the email. She testified during her deposition that "[she] knew they were trying to fire [her]" when she received the final written reprimand in January 2021. (Doc. 42-1 at 16). Further, Defendant warned Plaintiff that she would be terminated if her communication with customers did not improve. (*Id.* at 79). The termination report cites poor communication as a reason for termination. (*Id.* at 86). Defendant also cited leaving confidential information out unattended, which was witnessed on April 10, 2021. (*Id.*). But Plaintiff did not send the email asking to discuss discrimination until April 14, 2021. (*Id.* at 26; Doc. 47 at 15). Thus, there is no causal link between Plaintiff's email and her termination. Defendant had legitimate reasons for terminating Plaintiff prior to receiving her email and was free to act on those reasons.

Given these facts, Plaintiff has not established a prima facie case of retaliation.

## IV.    Convincing Mosaic.

In the alternative as to all her claims, Plaintiff argues that she has established convincing mosaics of circumstantial evidence to support discrimination and retaliation. Certainly, even if the claims fail under the *McDonnell Douglas* framework, a "plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent" through "a convincing mosaic of circumstantial evidence that

20

would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes*, 88 F.4th at 946 (citations and internal quotation marks omitted); *see Berry*, 84 F.4th at 1307 ("[A]n employee can prove retaliation with a convincing mosaic of circumstantial evidence.").

A convincing mosaic "may be made up of, among other things, (1) 'suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn'; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge*, 93 F.4th at 1198 (quoting *Lewis*, 934 F.3d at 1185).

As previously discussed, Plaintiff has failed to prove Defendant's reasons for termination were pretextual or that the timing of her termination was suspicious.[8] *See supra* Part I.B.; III.  Likewise, Plaintiff cannot show that Defendant made ambiguous statements or that Defendant treated non-disabled or male employees more favorably.

### A.  Plaintiff has not provided sufficient comparators.

To establish a convincing mosaic, evidence about similarly situated employees need not be "strict comparators." *Akridge*, 93 F.4th at 1198 (quotation omitted).  Still, Plaintiff discusses comparators only to say that "based on reviewing

---

[8] The pretext standard under *McDonnell Douglas* is the same as the pretext standard used to evaluate whether plaintiff has shown a convincing mosaic.  *See Reyes v. Fed. Express Corp.*, No. 21-12639, 2022 WL 3867901, at *4 (11th Cir. Aug. 30, 2022) (holding no pretext shown for a convincing mosaic where the plaintiff failed to show pretext under *McDonnell Douglas*).

all the CXI scores from January 2020 through April 2021, the following male, nondisabled employees" received a CXI score comparable to her 6.42 April 2021 score at least once. (Doc. 47 at 16). CXI scores measure overall customer experience, of which communication is a part. (Doc. 42-1 at 22, 88–98). Plaintiff does not allege that any of her offered comparators received a low CXI score because of poor communication. Moreover, Plaintiff does not allege that any of them left confidential information out unattended. Thus, there is nothing except a general score to compare Plaintiff with these other employees. Such comparisons are insufficient even under the convincing mosaic standard. *See, e.g.*, *Robert v. City of Boca Raton, Fla.*, No. 21-13779, 2024 WL 3066604, at *5 (11th Cir. June 20, 2024) (finding comparators insufficient for a convincing mosaic where "[the comparators'] one-off performance issues reasonably distinguish them from [plaintiff]'s repeated . . . errors").

Further, Plaintiff alleges that she was assigned less work because of her gender. (Doc. 47 at 13; Doc. 47-1 at ¶ 7; Doc. 42-1 at 10–13). Specifically, Plaintiff alleges that Travis Clark, a male employee, "receiv[ed] more appointments on the calendar." (Doc. 47-1 at ¶ 7; Doc. 42-1 at 10–13). Plaintiff points to Clark as the sole comparator yet provides no further information other than that he is male. (Doc. 42-1 at 10–13). Without more, this comparator is insufficient to argue that Plaintiff and Clark were similarly situated.

### B. Plaintiff has not established suspicious timing.

To show the suspicious timing of her termination for her discrimination

claims, Plaintiff relies on her retaliation causal connection argument. (*See* Doc. 47 at 14–15, 17–18). For reasons already addressed, that argument fails. *See supra* Part III. Moreover, timing is insufficient to create a convincing mosaic for discrimination when termination "was also in close proximity" to acts of misconduct for which Plaintiff was terminated. *Hayes v. ATL Hawks, LLC*, 844 F. App'x 171, 180 (11th Cir. 2021); *Key v. Cent. Ga. Kidney Specialists PC*, No. 20-14351, 2021 WL 5321892, at *4 (11th Cir. Nov. 16, 2021) (finding that timing was not suspicious given the plaintiff's "unprofessional conduct on the days immediately preceding" her termination). Here, Defendant's termination report cited unattended confidential information as a reason for termination, which was observed on April 10, 2021— days before Plaintiff's termination. (Doc. 42-1 at 86).

### C. Plaintiff cannot point to any ambiguous statements.

Plaintiff argues that Defendant has given "shifting reasons" for her termination. (Doc. 47 at 17). Specifically, she alleges that Defendant added unattended confidential information as a reason for termination days after the initial termination notice. (*Id.*). Plaintiff insists that the April 14, 2021, termination notice cites only low CXI scores and poor communication. (*Id.*). Not so. The termination notice dated April 14, 2021, and signed by Plaintiff on the same date, explains that she left "[c]urrent RO's . . . on and in [her] desk" in violation of company policy because the information is "[c]onfidential." (Doc. 42-1 at 86). Thus, Defendant's statements concerning Plaintiff's termination were not ambiguous or "shifting."

In sum, Plaintiff has failed to establish a convincing mosaic of circumstantial evidence to support any of her discrimination or retaliation claims.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly, deny any pending motions as moot, terminate all deadlines, and close the case.

**ORDERED** in Fort Myers, Florida, on July 25, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE